**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**APRIL SESSION, 1999**

FILED

May 26, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9806-CC-00258** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **FRANKLIN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J. CURTIS SMITH,** |
| **RONNIE R. GARNER,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (DUI) |

ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF FRANKLIN COUNTY

FOR THE APPELLANT:

ROBERT S. PETERS
100 First Avenue, S.W.
Winchester, TN 37398

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

LUCIAN D. GEISE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

J. MICHAEL TAYLOR
District Attorney General

STEVEN M. BLOUNT
Assistant District Attorney General
1002 West Main Street
Decherd, TN 37324

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Ronnie R. Garner, appeals from his conviction for second-offense DUI and failure to wear a seat belt. The sole issue he argues on appeal is the sufficiency of the evidence for DUI. We conclude that the evidence was sufficient to permit the jury to convict Defendant of DUI, and we therefore affirm the verdict of the jury as approved by the trial court.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at

191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

At trial, Tennessee Highway Patrol Officer James T. Sears testified that on March 21, 1997, he and two other officers conducted a traffic-enforcement roadblock on Highway 127 in Franklin County. At approximately 11:47 p.m., Defendant drove into the roadblock very slowly, with his headlights on bright beam. When Defendant stopped his vehicle, Sears approached and smelled an odor of alcohol. After requesting Defendant's license, Sears asked him if he had been drinking, to which Defendant responded that he had consumed three to four beers. Although Sears found Defendant's demeanor cooperative, he stated that Defendant's speech was "somewhat dragged out and slurred."

Based upon these observations, Officer Sears asked Defendant to park his vehicle on the side of the road and step out. Sears noticed that after Defendant slowly exited the car and closed the door, he leaned back onto the door. Sears then conducted two field sobriety tests: the finger-to-nose test and the walk-and-turn test. Sears testified that he was not certified to conduct the horizontal gaze nystagmus test.

First, he directed Defendant to perform the finger-to-nose test. Defendant began the test without waiting for Sears to finish the instructions, contrary to Sears's direction; and the officer testified that he ultimately had to instruct Defendant three times. According to Sears, Defendant was unsteady on his feet and missed his nose, touching his cheek instead.

Next, Sears asked Defendant to perform the walk-and-turn test. Defendant again began the task before Sears finished the instructions, requiring the officer to stop him and give the instructions again. Defendant took three to four steps and became so unsteady that Sears "had to grab him" because he was "afraid that he would fall out in traffic or fall down and hurt himself." Both tests were conducted on a paved roadway, with Defendant's back to the patrol car's blue lights. Officer Sears explained the implied consent law to Defendant,[1] and Defendant refused a blood alcohol test.[2] Sears then arrested Defendant and took him to the county jail.

At the jail, county correctional officer Kim Rhodes met Sears to admit Defendant for booking. Both Sears and Rhodes testified that Defendant had difficulty walking and required assistance entering the jail. According to Rhodes, when she grasped Defendant's arm to steady him, she smelled a "strong odor of alcoholic beverage." Rhodes testified that she independently concluded on the standard "intake" document that Defendant was "under the influence of alcohol." Finally, Rhodes stated that Defendant "stumbled" out of the holding facility when he was permitted to leave with a responsible party.

Defendant testified on his own behalf at trial. He stated that he was one hundred percent disabled due to a past injury to both his feet. He testified that while painting, he fell and broke both feet, requiring him to be bedridden and

---

[1] Defendant testified at trial that he could not read. He told Officer Sears at the scene that he fully understood the implied consent law prior to signing the refusal form after Sears read the form to him.

[2] According to trial testimony, breath alcohol tests were not available in Franklin County at the time of this offense.

-4-

confined to a wheelchair for one year. Defendant recounted how the disability causes him great pain and difficulty in walking and reported that he often must ingest prescription painkillers. He stated that although his feet hurt the night he performed the field sobriety tests, he had not ingested any painkillers. In addition, he testified that he told Officer Sears before the tests that he could not perform them because of his disability, a fact which Sears recollected. Finally, Defendant stated that he had consumed three or four beers between the hours of 11:00 a.m. and 2:00 p.m.; that he had not had any alcohol after 2:00 p.m.; and that in his opinion, he was not impaired.

The foregoing testimony presented classic questions of fact and credibility for the jury to resolve. The jury determined from the evidence that Defendant was driving under the influence of intoxicants, despite its acceptance or rejection of testimony regarding Defendant's disability. We conclude that such a resolution was properly within the jury's purview and that the evidence is sufficient to support the finding by the jury of guilt beyond a reasonable doubt.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
JAMES CURWOOD WITT, JR., JUDGE