# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## STATE OF TENNESSEE v. MARK A. CRITES

**Appeal from the Circuit Court for Williamson County**
**No. II-CR025406      James G. Martin, III, Judge**

**No. M2013-01681-CCA-R3-CD   Filed 06/06/2014**

Appellant, Mark A. Crites, was convicted of operating a motor vehicle after being declared a habitual traffic offender, a Class E felony. *See* Tenn. Code Ann. § 55-10-616. The trial court sentenced him as a career offender to serve six years in the Tennessee Department of Correction. On appeal, appellant argues that the assistant district attorney general committed prosecutorial misconduct in her opening statement and that the evidence was insufficient to support his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Sandra L. Wells (on appeal), Franklin, Tennessee; and Everette Parrish (at trial), Brentwood, Tennessee, for the appellant, Mark A. Crites.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Kim R. Helper, District Attorney General; and Kelly A. Lawrence, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

Appellant was involved in a single-vehicle accident on September 19, 2010, and was subsequently indicted for operating a motor vehicle after being declared a habitual traffic offender. At his trial, Franklin Police Officer Cory Kroegar testified that on September 19, 2010, at approximately 11:30 p.m., he "noticed a small four-door red car . . . in a drainage ditch." He and his partner observed a young man walking away from the vehicle and a car

circling the area. Officer Kroegar's partner talked to the young man, James Sweeny, Jr., and Officer Kroegar talked to the driver of the car that had been circling, who was Mr. Sweeny's mother. Officer Kroegar then saw appellant, who was trying to get into Ms. Sweeny's car without speaking to either officer. Officer Kroegar asked appellant to speak with them about the accident, and he observed that appellant was "unsteady on his feet[,] . . . had some slightly slurred speech[,] and . . . a strong odor of alcoholic beverage on or about his person."

Officer Kroegar testified that appellant told him that he had not been driving the vehicle but that the vehicle had gotten a flat tire before getting stuck in the ditch. Appellant also told him that he had gotten in the driver's seat to attempt to move the vehicle out of the ditch but was unsuccessful. Officer Kroegar denied seeing any males, other than Mr. Sweeny and appellant, in the area or proof that another driver had been there. Officer Kroegar testified that the vehicle had at least one flat tire and that it was registered to appellant's girlfriend, Donna Peek. Officer Kroegar further testified that appellant was not able to produce valid identification when asked. Officer Kroegar ascertained that appellant's driver's license had been revoked and that appellant was a habitual traffic offender. Officer Kroegar identified a State of Tennessee Department of Safety certification letter regarding appellant's driver's license status and an order from Sumner County Criminal Court declaring appellant to be a habitual traffic offender, both of which the State introduced into evidence. On cross-examination, Officer Kroegar testified that tire marks showed that the vehicle had been driven through a front yard before stopping in the ditch and that none of the vehicle's tires had traction while in the ditch.

Franklin Police Lieutenant Chris Clausi testified that he responded to the accident scene, arriving after Officer Kroegar and his partner. He further testified that he had seen appellant driving on West Main Street in Franklin. When asked whether he was "confident that[] the same individual [he] witnessed at the [accident] scene was the same individual driving earlier that day," Lieutenant Clausi responded, "Absolutely."

On cross-examination, Lieutenant Clausi testified that he saw appellant driving fifteen minutes before he responded to the accident scene. He maintained that he was "certain" that he saw appellant driving. He explained that his patrol vehicle was stopped while waiting to turn, that he was in a well-lit area, and that his headlights were shining into appellant's vehicle. He agreed that appellant's headlights were on but that they did not prevent him from identifying appellant. When asked "[w]hat distinguishing features led [him] to believe" that the driver was appellant, Lieutenant Clausi said, "I just know it was him. Just as I know . . . that's [the assistant district attorney general] sitting at the table there[.]" The State then rested its case.

On behalf of appellant, Malcolm Bennett testified that "if it was the same night," he had been driving the car when it got a flat tire. The car slid into a ditch after he pulled over to the side of the road. Mr. Bennett said that he left the scene to find spare tires because the car had two flat tires. Appellant called Mr. Bennett several days later and said that he had been charged with driving the vehicle that night.

On cross-examination, Mr. Bennett agreed that he did not "come forward" about his driving the vehicle until two months after appellant was arrested, when his case was in general sessions court. He said that the time he drove Ms. Peek's car and got two flat tires was "around that same time frame" as when appellant had been charged. He further said, "I'm not can't [sic] be positively sure, but it was around that time."

The jury found appellant guilty as charged. Subsequently, the trial court sentenced him as a career offender to serve six years in the Tennessee Department of Correction.

## II. Analysis

## I. Prosecutorial Misconduct

Appellant alleges that the assistant district attorney general committed prosecutorial misconduct during her opening statement by promising the jury that it would hear testimony from appellant or direct evidence of statements made by appellant. Apparently recognizing that the State would argue that the issue had been waived, appellant requests this court to review the alleged misconduct as plain error. The State contends that appellant waived the issue by not objecting contemporaneously and by not including the issue in his written motion for new trial. The State further argues that the issue does not merit plain error review. We agree with the State.

The record shows that appellant filed his original motion for new trial on April 1, 2013, and filed an amended motion on May 14, 2013. The amended motion alleged prosecutorial misconduct in closing arguments but not in the opening statements. At the motion for new trial hearing, appellant's counsel proceeded on the amended motion alone. Counsel argued orally that prosecutorial misconduct during opening statements was reversible error. However, the record before this court does not include a written motion for new trial incorporating the oral amendment.

Failure to include an issue in a motion for new trial, other than sufficiency of the evidence and sentencing, results in waiver of plenary review of that issue. *See* Tenn. R. App. P. 3(e). Rule 33(b) of the Tennessee Rules of Criminal Procedure provides that "[a] motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing,

within thirty days of the date the order of sentence is entered." "This court has previously stated that a defendant's failure to reduce an oral amendment to writing within thirty days of the entry of the sentencing order waives the issue." *State v. Ronald Lee Stewart*, No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, *4 (Tenn. Crim. App. May 21, 2010) (citing *State v. Mark C. Noles*, No. M2006-01534-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. Nov. 6, 2007); *State v. Ronnie Watson*, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at *1-2 (Tenn. Crim. App. Sept. 16, 2002); *State v. Christopher D. Lanier*, No. W2001-00379-CCA-R3-CD, 2002 WL 1482712, at *4 (Tenn. Crim. App. Feb. 1, 2002)). Thus, the issue is waived for failure to reduce the oral amendment to writing.

Moreover, plain error review is not warranted in this case. Our supreme court formally adopted this court's *Adkisson* test for reviewing claims of plain error:

> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). To rise to the level of "plain error," an error "'must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)). All five factors must be established by the record before a court will find plain error. *Smith*, 24 S.W.3d at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record.

Here, during her opening statement, the assistant district attorney general stated:

> You'll hear testimony from the Officers and through witnesses today that Mr. Crites and his nephew, Mr. Sweeny, had gone to the store to get some cigarettes, and on the way back had hit something, according to Mr. Sweeny, flattened the tires and ended up in the ditch. Now, you'll hear Mr. Crites tell the Officers that he wasn't driving, he wasn't the one driving, and that actually he was just trying to move the vehicle out of the ditch, to get it out of the ditch. You may in fact hear him say that another third person, who was not seen by Officers at the scene, was driving.

-4-

Appellant contends that these statements constitute prosecutorial misconduct because the prosecutor was essentially promising the jury that appellant would testify during the trial. Our supreme court has ruled that "[o]pening statements, while not evidence, must 'be predicated on evidence introduced during the trial of the case.'" *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012) (quoting *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978)). Thus, had the prosecutor been promising testimony from appellant, she would have been outside the bounds of what is allowed in opening statements, particularly due to appellant's constitutional right to remain silent. However, from the context, it is clear that the prosecutor was referring to testimony from Mr. Bennett and the police officers, in which they would recount what appellant told them, not testimony from appellant himself. Therefore, no clear and unequivocal rule of law was breached, and plain error review is not appropriate. Appellant is without relief as to this issue.

## B. Sufficiency of the Evidence

Appellant argues that the evidence was not sufficient to support his conviction when Lieutenant Clausi "could not give a complete description" of the person he saw driving and because Mr. Bennett testified that he had been driving. The State responds that Lieutenant Clausi's testimony alone was sufficient to uphold appellant's conviction. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn.

1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To uphold appellant's conviction, the State had to prove (1) that appellant was subject to a judgment or order prohibiting him from operating a motor vehicle and (2) that he operated a motor vehicle while that judgment or order was in effect. *See* Tenn. Code Ann. § 55-10-616. Viewed in the light most favorable to the State, the evidence adduced at trial proved that appellant had been declared a habitual traffic offender and was prohibited from driving in Tennessee. Lieutenant Clausi testified that he saw appellant driving just fifteen minutes before the lieutenant responded to a single-vehicle accident. Lieutenant Clausi was unequivocal in his identification of appellant. Appellant was at the scene of that accident and admitted to Officer Kroegar that he had been behind the wheel of the vehicle attempting to extricate it from the ditch. By its verdict, the jury found Malcolm Bennett's testimony that he had been driving to be not credible, and this court is not in a position to re-weigh the jury's credibility determination. *Dorantes*, 331 S.W.3d at 379. We conclude that there was sufficient evidence to support appellant's conviction.

## CONCLUSION

Based on our review of the record, the applicable law, and the briefs of the parties, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE