IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2017

**STATE OF TENNESSEE v. JOEL W. ALLEN**

**Appeal from the Circuit Court for Benton County**
**No. 15-CR-45      C. Creed McGinley, Judge**

_____

**No. W2016-01040-CCA-R3-CD**

_____

The Defendant, Joel W. Allen, was convicted by a Benton County Circuit Court jury of driving under the influence, "DUI," fifth offense, a Class E felony; simple possession of marijuana, a Class A misdemeanor; and operating a vehicle after being declared a habitual motor vehicle offender, a Class E felony. He was sentenced to an effective term of twelve years in the Tennessee Department of Correction. On appeal, he argues that the evidence is insufficient to sustain his DUI conviction and that he received ineffective assistance of counsel. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Anthony L. Clark, Paris, Tennessee (on appeal); and Alan G. Ward, Camden, Tennessee (at trial), for the appellant, Joel W. Allen.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Vance Dennis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was indicted for fifth offense DUI, simple possession of marijuana, and operating a vehicle after being declared a habitual motor vehicle offender. At his trial, Deputy Shaun Gary with the Benton County Sheriff's Office testified that he was on patrol on February 1, 2015, when he observed a red Suburban. He had been informed

that the Defendant, who was not authorized to operate a motor vehicle having been declared a habitual motor vehicle offender, had been seen driving regularly and was likely to be driving a red Suburban. Deputy Gary ran the license plate number and confirmed that the vehicle belonged to the Defendant. He then followed the vehicle for approximately a mile and a half, observing it drive "erratic and all over the road."

Deputy Gary activated his blue lights and followed the Defendant for a quarter mile before the Defendant pulled over. Deputy Gary confirmed that the Defendant was the driver and noted that he "could smell a strong odor of an alcoholic type beverage coming from the vehicle." He also smelled the odor of alcohol "[o]n or about [the Defendant's] person." Deputy Gary asked the Defendant if he had been drinking, to which the Defendant responded that he had had "just a couple and that the only reason that he was driving was because his wife had had more to drink than he had." Deputy Gary observed that the Defendant's wife appeared to be intoxicated.

Deputy Gary asked the Defendant to exit the vehicle and administered field sobriety tests. The Defendant was "polite and compliant," but he "performed unsatisfactorily" on all of the tests. The Defendant was "wobbly" during the instruction phase of the "nine step walk and turn" test and, during the test, "missed his heel to toe, and he step[ped] off line . . . [o]n step[s] two, six, and eight." Deputy Gary noted that the Defendant had "the inability to follow the simple instructions." The Defendant only performed the "one leg stand" test for two seconds before stating that he could not perform the test because he had unspecified "problems with his legs." The Defendant also "got off count, forgot where he was in his counts" when performing the "finger count" test.

Deputy Gary placed the Defendant under arrest for driving under the influence and being a habitual motor vehicle offender. During the ensuing pat-down before placing the Defendant in the patrol car, Deputy Gary found "a joint and a half [of] marijuana" in a cigarette pack in the Defendant's shirt pocket. The Defendant admitted that the "joints" were marijuana. "[S]everal burnt roaches" were found in the ashtray of the Defendant's vehicle. Deputy Gary informed the Defendant of the implied consent law and mandatory blood draw, but the Defendant did not consent to giving a sample.

Deputy Gary testified that the entire encounter took more than an hour. During that time, the Defendant never told him that his wife was having a medical emergency, nor did the Defendant's wife request medical assistance. Deputy Gary thought that the Defendant's wife appeared to be intoxicated and required that she have a friend come take her home because he considered her too intoxicated to drive.

Gail Mooney, Chief Deputy Clerk of the Madison County Circuit Court, testified that the Defendant had been declared a habitual motor vehicle offender and provided a copy of the order providing as such.

The Defendant's wife, Traci Allen, testified on the Defendant's behalf. Mrs. Allen stated that she suffers from a medical condition in which she experiences "pe[tit] mal seizures" if her "blood sugar drops really low real fast." On the night in question, she was driving when her blood sugar dropped, so she and the Defendant stopped to get something to eat. Rather than eating the food at the restaurant, Mrs. Allen attempted to eat in the car while the Defendant drove them home to get her medication. Mrs. Allen admitted that she did not bring any documentation of her medical condition to court, despite knowing there was a possibility she would be testifying.

While the jury deliberated, the Defendant stipulated that he had the prior DUI convictions listed in the indictment, negating the need for a bifurcated trial on that issue. Thereafter, the jury returned with verdicts convicting the Defendant as charged.

## ANALYSIS

### I. Sufficiency

The Defendant argues that the evidence is insufficient to sustain his conviction for driving under the influence. When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

The DUI statute provides in pertinent part that "[i]t is unlawful for any person to drive . . . while . . . [u]nder the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess[.]" Tenn. Code Ann. § 55-10-401(a)(1).

- 4 -

In the light most favorable to the State, the evidence shows that Deputy Gary observed the Defendant driving "erratic and all over the road." After pulling him over, Deputy Gary noticed an odor of alcohol about the Defendant, and the Defendant admitted to having a couple of drinks before driving. Deputy Gary administered several field sobriety tests and determined that the Defendant failed all of them. The Defendant refused to consent to a blood test to analyze his blood alcohol concentration. It was the jury's prerogative to accredit Deputy Gary's testimony that his observations led him to the conclusion that the Defendant was intoxicated. The evidence is sufficient to sustain the Defendant's conviction for driving under the influence. The Defendant asserts that the evidence is insufficient because Deputy Gary did not administer a breath test or obtain a search warrant for his blood. However, this argument ignores the fact that the Defendant refused to consent to a blood test, and a breath or blood test is not required to sustain a conviction for driving under the influence. The Defendant is not entitled to relief.

## II. Ineffective Assistance of Counsel

The Defendant claims that he received ineffective assistance of counsel because of inadequacies in counsel's voir dire and assistance on appeal.

To establish a claim of ineffective assistance of counsel, the defendant has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

- 5 -

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The Defendant asserts that counsel rendered ineffective assistance during voir dire by "failing to ask any questions relating to the nature of the offenses charged, potential relations to the [Defendant], and other potential juror conflicts." With regard to this claim, we note that the transcript of voir dire indicates that the State asked questions about the potential jurors' relationships and conflicts with the Defendant as well as whether any of them or their family members had been charged with driving under the influence. This suggests a reasonable action on the part of counsel to not immediately rehash the same topics.

Regardless, there is no proof that the supposedly inadequate voir dire actually resulted in a biased jury. See State v. Smith, 357 S.W.3d 322, 348 (Tenn. 2011) ("In order to prevail on a claim of ineffective assistance of counsel based on deficient voir dire, a petitioner is required to prove that the deficiency resulted in having a juror seated who was actually biased."). As this court has previously said, "the practice of raising ineffective assistance of counsel claims on direct appeal is fraught with peril since it is virtually impossible to demonstrate prejudice as required without an evidentiary hearing." See State v. Blackmon, 78 S.W3d 322, 328 (Tenn. Crim. App. 2001) (citations omitted). The Defendant has failed to show that counsel rendered deficient performance or that he was prejudiced by any alleged deficiency.

The Defendant asserts that counsel rendered ineffective assistance on appeal because he "failed to timely file a brief in this appeal" and was suspended from the practice of law but "never notified [the Defendant] of [counsel's] suspension." With regard to these claims, we note that this court adequately protected the Defendant's rights

by giving him time to secure new representation. The Defendant obtained new representation by an attorney who filed a notice of appearance, supplemented the record on appeal, and filed a brief. The Defendant has not shown any prejudice in this appeal from any of his prior counsel's deficiencies.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE